FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

2018 FEB 14  AM 8: 49

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY COMPANY,

US DISTRICT COURT
MIDDLE DISTRICT OF FLORID..
ORLANDO. FLORIDA

      Plaintiffs,                      Case No.

vs.

FAMILY PRACTICE AND REHAB, INC.,
and GILSON MORTIMER,

      Defendants.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiffs, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and

STATE FARM FIRE AND CASUALTY COMPANY, by counsel, sue Defendants, FAMILY

PRACTICE AND REHAB, INC., and GILSON MORTIMER (sometimes collectively referred

to as the "Defendants"), and state as follows:

### Parties, Jurisdiction, and Venue

      1.      Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this action

because it is between citizens of different states, and the amount in controversy exceeds

$75,000.00, exclusive of interest, costs, and attorneys' fees. As explained further in the

allegations below: (a) Plaintiffs, STATE FARM MUTUAL AUTOMOBILE INSURANCE

COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, are Illinois

corporations with their principal places of business in the State of Illinois; (b) Defendant,

FAMILY PRACTICE AND REHAB, INC., is a Florida corporation domiciled in, and with its

principal place of business in, the State of Florida; (c) Defendant, GILSON MORTIMER is an individual who is domiciled in, and is a citizen of, the State of Florida; and (d) the amount in controversy in this action exceeds $375,000.00. Additionally, this Court has supplemental jurisdiction over the claims made by STATE FARM FIRE AND CASUALTY COMPANY which exceed $6,500.00 pursuant to 28 U.S.C. § 1367(a).   Thus, all requirements for this Court to exercise its diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are satisfied.

2.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district because Defendants are located in this district, and a substantial part of the actions giving rise to the claims occurred in or near Orlando, Florida.

3.      Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm Mutual"), is an Illinois corporation with its principal place of business in Illinois, which issues automobile insurance policies and otherwise conducts business in Florida with proper authority to do so.

4.      Plaintiff, STATE FARM FIRE AND CASUALTY COMPANY ("State Farm Fire"), is an Illinois corporation with its principal place of business in Illinois, which issues automobile insurance policies and otherwise conducts business in Florida with proper authority to do so.

5.      Defendant, FAMILY PRACTICE AND REHAB, INC. ("Family Practice") was: (a) formerly a Florida corporation organized under the laws of the State of Florida until its dissolution in 2015; (b) engaged in the operation of a medical practice with its principal place of business located in Orlando, Florida; and (c) a medical facility operating under a Certificate of Exemption from licensure issued by the Florida Agency for Healthcare Administration

("AHCA") (AHCA number 6691, exemption number 6620).

6.      Defendant, GILSON MORTIMER ("Mr. Mortimer"), is a citizen of the State of Florida, is domiciled in Florida, and is otherwise within the jurisdiction of this Court.

## Family Practice's Unlawful Ownership Scheme

7.      Defendants marketed Family Practice to patients who have been involved in automobile accidents and are insured under automotive insurance policies providing personal injury protection ("PIP") coverage and, in some cases, medical payment coverage ("MPC" or "MedPay") and obtained an assignment of benefits from each of the patients whose claims are at issue herein so they can directly bill medical expenses to State Farm Mutual and State Farm Fire.

8.      Under Florida law, Family Practice is required to be licensed by AHCA as a Health Care Clinic unless it is wholly owned by a physician or is otherwise eligible for a licensure exemption.

9.      In 2012, Defendant, Family Practice, applied to AHCA for a licensure exemption pursuant to Rule 59A-33.006 of the Florida Administrative Code, claiming to be wholly owned by Charles H. Richard, D.O., ("Dr. Richard"), a physician licensed to practice osteopathic medicine in the State of Florida.

10.     At all material times, Family Practice falsely held itself out as an entity wholly owned by Dr. Richard.  As a result, all of the medical bills Family Practice submitted to State Farm Mutual and State Farm Fire were unlawful.

11.     In reality, Family Practice was owned, in whole or in part, by Mr. Mortimer, a layperson who is not a licensed medical practitioner in the State of Florida. Mr. Mortimer caused Family Practice to misrepresent that it was a properly licensed medical clinic owned by Dr.

Richard in an effort to unlawfully avoid Florida's licensure requirements for healthcare clinics.

12.     Dr. Richard has never been the true owner of Family Practice.  For example and without limitation, Dr. Richard: a) never treated Family Practice's patients more than once a month; b) only worked for Family Practice as a 1099 Independent Contractor; c) never had keys and never knew the security code to the Family Practice clinic; d) was not involved in training, hiring, supervising, or firing Family Practice's employees; e) made no business decisions for Family Practice; f) never participated in Family Practice's marketing or advertising; g)  never participated in the preparation of any tax documents or financial records for Family Practice; h) never signed any checks on behalf of Family Practice; and i) otherwise had no management or supervisory responsibility for Family Practice's daily activities or operations.  A true and correct copy of Dr. Richard's October 8, 2015, Affidavit, describing his lack of ownership or involvement in the operations of Family Practice, is attached hereto as Exhibit "C."

13.     On the contrary, Mr. Mortimer was the person who at all material times: a) handled the negotiations for Family Practice's lease of the office space for the clinic; b) purchased and secured the office equipment and supplies for the clinic; c) made all personnel and employment decisions, including the hiring, firing, supervision, and training of Family Practice's employees, d) had ultimate authority to, and actually made, all business decisions; e) handled the clinic's billing and licensing matters; f) made Family Practice's banking, financial and tax decisions; g) dealt with any and all lawsuits involving Family Practice; h) handled all of Family Practice's advertising and marketing activities; and i) held all or part of the genuine ownership interests in Family Practice.

14.     As set forth in Dr. Richard's Affidavit attached hereto as Exhibit "C," Mr.

Mortimer "set up the clinic," was "responsible for operating Family Practice," controlled "the business and money for Family Practice" and oversaw "all activity and operations at Family Practice."

15.     Based on Mr. Mortimer's ownership interest in Family Practice, the clinic was not lawfully operating under a proper AHCA Health Care Clinic licensure exemption, and was not otherwise properly licensed under Florida law since Family Practice was not wholly owned by Dr. Richard.

16.     Family Practice treated patients insured by State Farm Mutual and State Farm Fire who had allegedly suffered injuries in automobile accidents with massage therapy, chiropractic adjustments, and other chiropractic and physical therapy modalities.

17.     Family Practice, at the direction and control of Mr. Mortimer, who was personally involved in the clinic operations and billing process, then billed State Farm Mutual and State Farm Fire for the treatment of those patients insured by State Farm Mutual or State Farm Fire, and sought reimbursement of their charges under the patients' respective PIP and/or MedPay coverages in their policies. Defendants engaged Equitable Services, LLC ("Equitable Services"), to prepare and submit all bills for services allegedly rendered to State Farm Mutual and State Farm Fire for reimbursement.

18.     Family Practice: a) treated the patients insured under State Farm Mutual and State Farm Fire policies (collectively, the "Insureds"), which are identified in Exhibits "A" and "B," respectively; b) billed State Farm Mutual and State Farm Fire for such treatments, and c) was paid PIP, and where applicable, MPC benefits by State Farm Mutual and State Farm Fire for those claims in the amounts set forth in Exhibits "A" and "B" hereto.

19.     A true and correct list of State Farm Mutual Insureds who were allegedly treated by Family Practice are identified by initials and respective claim numbers (partially redacted) in Exhibit "A."

20.     A true and correct list of State Farm Fire insureds who were allegedly treated by Family Practice are identified by initials and respective claim numbers (partially redacted) in Exhibit "B."

21.     When Dr. Richard refused to continue to participate in Family Practice's operations, Mr. Mortimer arranged for a purported sale of Family Practice, which was in fact a sham.

22.     On or about October 1, 2015, Dr. Phuc Lam ("Dr. Lam") purportedly purchased Family Practice from Dr. Richard.  As stated by Dr. Richard in his Affidavit dated October 19, 2016 (Exhibit "D"), he did not sell Family Practice to Dr. Lam (or any other person or entity), and did not even have an ownership interest to sell.  As such, Family Practice's ownership was never transferred by Dr. Richard or otherwise transferred to Dr. Lam, but instead continued to be owned, in whole or in part, by Mr. Mortimer and controlled by him.

23.     Pursuant to subsections 627.736(5)(b)1.b. and c., *Florida Statutes*, State Farm Mutual and State Farm Fire are not required to pay PIP or MedPay benefits for: (a) any claim or charges submitted by Family Practice that contains a knowingly false or misleading statement relating to the claim or charges; or  (b) any service or treatment performed by Family Practice that was not lawful at the time rendered.

24.     Pursuant to Florida's Health Care Clinic Act, claims made by a clinic to an insurer are noncompensable and unenforceable if the clinic is required to be licensed but is not so

licensed, or if the clinic is otherwise operating in violation of the Florida Health Care Clinic Act's licensing requirements.   § 400.990 – 995, Fla. Stat. (2017).

25.     The services or treatments that Family Practice allegedly rendered to State Farm Mutual and State Farm Fire's Insureds were not lawfully rendered because they were not in compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment.

26.     Defendants willfully, knowingly, and intentionally conspired to defraud State Farm Mutual and State Farm Fire by misrepresenting Dr. Richard, and then Dr. Lam, were the owners of Family Practice at all material times.

27.     Defendants have actual knowledge, or reasonably should have had such knowledge, or have acted in deliberate ignorance or reckless disregard of such knowledge, that the bills and supporting documentation Family Practice submitted to State Farm Mutual and State Farm Fire for reimbursement contained false or misleading statements or were otherwise based upon deceptive misrepresentations made to State Farm Mutual and State Farm Fire.

28.     Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from State Farm Mutual and State Farm Fire, State Farm Mutual and State Farm Fire did not discover, and should not have reasonably discovered, that their damages were attributable to fraud until after conducting a diligent investigation and getting Dr. Richard's Affidavit on or around October 8, 2015.

29.     Despite State Farm Mutual and State Farm Fire's diligence in uncovering the fraud engaged in by Defendants, their material misrepresentations, intentional non-disclosures, and other affirmative and passive acts described above, State Farm Mutual and State Farm Fire

only recently discovered the fraud perpetrated by the Defendants and were also prevented from uncovering the fraud, thereby equitably tolling the statute of limitations period in this action.

30.     All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

## COUNT I – FRAUD (AS TO BOTH DEFENDANTS)

31.     State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

32.     From 2012 through 2015, Family Practice, at the express direction, and under the control of Mr. Mortimer, knowingly submitted seventy five (75) false, misleading, or fraudulent claims by delivering medical bills (collectively the "Bills") and related medical documentation to State Farm Mutual and State Farm Fire for treatment allegedly rendered to their Insureds identified in Exhibits "A" and "B."

33.     Family Practice knowingly and intentionally submitted the Bills and supporting documentation for the claims identified in Exhibits "A" and "B" for the purpose of receiving payment in those claims (collectively referred to as the "Family Practice Claims"), under insurance policies issued by State Farm Mutual and State Farm Fire.   Mr. Mortimer participated in, and took the primary role in, causing and directing the submission of the medical bills and supporting documentation to State Farm Mutual and State Farm Fire.

34.     The Bills, reports, and other supporting documentation submitted by Family Practice, at the direction of Mr. Mortimer, for the Family Practice Claims were allegedly sent by its agent, Equitable Services, from Orlando, Florida, to State Farm Mutual and State Farm Fire at various addresses, including in Atlanta, Georgia, over the period of several years from 2012 to

2015.

35.     Each of the Bills, reports, and supporting documentation sent to State Farm Mutual and State Farm Fire by Family Practice contained statements of material fact, and constitutes false statements of material fact, because the Bills and supporting documentation allegedly set forth that the  services were lawfully rendered, the value of the services lawfully rendered, the physician who allegedly lawfully rendered the services therein and implicit in the submission of the Bills and medical documentation is the claim that all of the services were lawfully rendered by a properly licensed clinic wholly owned by Dr. Richard.

36.     The Bills, reports, and other medical documents prepared by Equitable Services under the direction and supervision of Family Practice and Mr. Mortimer, were submitted on behalf of Family Practice, and were sent by Family Practice or its agents to State Farm Mutual and State Farm Fire.  As such, the Bills, reports and medical documentation were knowingly and intentionally directed to State Farm Mutual and State Farm Fire for the intended purpose of getting paid monies by having State Farm Mutual or State Farm Fire issue payments under PIP or MedPay coverage in the Insureds' insurance policies.

37.     At the time of their submission, Family Practice and Mr. Mortimer knew the subject Bills and related medical documentation contained materially false representations of fact because Family Practice and Mr. Mortimer knew that the services were not lawfully rendered by a clinic operating under a lawful ownership structure and the clinic was not operating under a valid AHCA exemption.

38.     Family Practice, at the direction of Mr. Mortimer, made its misrepresentations regarding the subject Bills, medical documentation and charges for all claims listed in Exhibits

"A" and "B" with the intention of inducing State Farm Mutual and State Farm Fire to rely on them to make payment to Family Practice under the Insureds' PIP or MedPay insurance coverages. Mr. Mortimer knowingly participated and directed the fraudulent scheme as described herein because he was the true owner of Family Practice and derived a direct financial benefit from the scheme.

39.    In fact, State Farm Mutual and State Farm Fire relied upon Family Practice's false statements of material fact and fraudulent misrepresentations by collectively paying in excess of $375,000.00 in regard to the Family Practice Claims and suffered damages as a direct and proximate result of their reliance on Family Practice's material misrepresentations. As such, State Farm Mutual and State Farm Fire have been injured as a result of its reliance on the false statements set forth above by Defendants.

40.    Since Family Practice and Mr. Mortimer knowingly sought payment for the claims listed in Exhibits "A" and "B" and implicitly represented it was lawfully providing services to State Farm Mutual and State Farm Fire's Insureds, which induced Plaintiffs into paying such PIP and MedPay claims and caused Plaintiffs' to suffer damages, the Defendants committed common law fraud under Florida law.

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Plaintiff, STATE FARM FIRE AND CASUALTY COMPANY, respectfully request that this Court enter judgment against Defendants, FAMILY PRACTICE AND REHAB, INC., and GILSON MORTIMER, award compensatory damages, interest, costs, and attorneys' fees, and provide for such other and further relief the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT (AS TO BOTH DEFENDANTS)

41.     State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

42.     In reliance on Defendants' false and misleading charges relating to the unlawful medical procedures set forth in the Bills, statements, and other documentation, State Farm Mutual and State Farm Fire conferred unwarranted benefits on the Defendants by paying out PIP benefits, MedPay benefits, and other amounts on the Family Practice Claims that they would not have otherwise paid.

43.     State Farm Mutual and State Farm Fire conferred a benefit on Family Practice, and upon its true sole owner, Mr. Mortimer, by paying the claims listed in Exhibits "A" and "B," and Family Practice, and ultimately Mr. Mortimer, voluntarily accepted and retained the benefit of those payments. In fact, Mr. Mortimer as the true sole owner of Family Practice received a benefit from the payment of the claims listed in Exhibits "A" and "B," because the payments passed through to Mr. Mortimer in the form of compensation or distributions to him, individually.

44.     Defendants received and knowingly appreciated the monetary benefits conferred upon them by State Farm Mutual and State Farm Fire as a result of the Defendants' false and misleading charges for treatment and services provided to the Insureds and identified as the Family Practice Claims.

45.     In all of the Family Practice Claims, State Farm Mutual and State Farm Fire conferred benefits upon Defendants by paying benefits on the Family Practice Claims which resulted in Defendants receiving money from State Farm Mutual and State Farm Fire.   State

Farm Mutual and State Farm Fire, however, had no duty to pay for the unlawful and non-compensable medical services rendered to the Insureds and submitted within the claims identified in Exhibits "A" and "B."

46.     Defendants did not return any of the payments made by State Farm Mutual and State Farm Fire on behalf of the Insureds.

47.     In all of the Family Practice Claims, Defendants knowingly and voluntarily accepted and retained State Farm Mutual and State Farm Fire's payments.

48.     It would be inequitable to allow Defendants to retain these benefits, as Defendants were provided these benefits as a result of creating and presenting fraudulent medical bills and related medical documentation to State Farm Mutual and State Farm Fire for the Insureds listed in Exhibit "A" and Exhibit "B" when in fact, Defendants were not legally entitled to any benefits due to the fact Family Practice was not lawfully rendering services to the Insureds in violation of Florida law.

49.     An insurer can recover payments made to a clinic operating in violation of Florida's Health Care Clinic Act under a theory of unjust enrichment.

50.     In all of the Family Practice Claims, State Farm Mutual and State Farm Fire were not acting as volunteers.

51.     Based on the fact that State Farm Mutual and State Farm Fire conferred a benefit on Family Practice, and its sole true owner, Mr. Mortimer, when it paid PIP and MedPay claims, which Defendants were not legally entitled to keep, but nonetheless accepted and retained, the Plaintiffs have suffered damages and are entitled to recover as damages all of the monies State Farm Mutual and State Farm Fire paid out to Defendants for all claims listed in Exhibit "A" and

Exhibit "B."

WHEREFORE, Plaintiffs, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, respectfully request that this Court enter judgment against Defendants, FAMILY PRACTICE AND REHAB, INC., and GILSON MORTIMER, for compensatory damages, attorneys' fees, interest, costs, and any such other and further relief the Court deems just and proper.

### COUNT III- DECLARATORY JUDGMENT (AS TO FAMILY PRACTICE)

52.     State Farm Mutual and State Farm Fire reallege the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

53.     This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201, and is within the jurisdiction of this Court as to Family Practice.

54.     Due to the actions of Family Practice, including but not limited to, knowingly submitting claims to State Farm Mutual and State Farm Fire for benefits under PIP or MedPay coverage in the subject insurance policies when it knew it had submitted false, misleading, or fraudulent applications for exemption from licensure as a health care clinic, was not wholly owned by Dr. Richard and was not lawfully rendering services, Family Practice caused to be submitted certain claims and medical bills to State Farm Mutual and State Farm Fire that contained knowingly false or misleading statements as defined by sections 627.736(5)(b)1.c. and 627.732(10), *Florida Statutes*.   A composite list of the claims subject to this Count of this Complaint is attached as Exhibit "E" (the "Pending Claims").

55.   Family Practice made demands on State Farm Mutual and State Farm Fire or has otherwise submitted bills and supporting documentation to State Farm Mutual and State Farm Fire in regard to the Pending Claims, have not yet been paid, or have been partially paid.

56.   State Farm Mutual, State Farm Fire, and their Insureds have no duty or obligation to pay, and are not required to pay a claim or any charges, (a) for services that were not lawful at the time rendered, or (b) to Family Practice because Family Practice knowingly submitted false or misleading statements relating to the Pending Claims.

57.   In completing and knowingly submitting medical bills and other supporting documentation to State Farm Mutual and State Farm Fire for payment when it knew it had submitted a fraudulent application for exemption from licensure as a health care clinic, was not wholly owned by Dr. Richard and was not lawfully rendering services to the insureds of State Farm Mutual and State Farm Fire, Family Practice caused to be presented false claims and claims for services that were not lawfully rendered.

58.   Pursuant to sections 627.736(5)(b)1.c., 626.989(1)(a)2., and 817.234, *Florida Statutes*, and other Florida law, Family Practice's actions have relieved State Farm Mutual and State Farm Fire, and their Insureds, of any duty or obligation to pay PIP or MedPay benefits or other compensation for any portion of the bills issued by Family Practice for treatment allegedly provided to the Insureds, as well as any of the additional bills submitted by Family Practice as they become due and owing.

59.   Family Practice disagrees with and disputes the above-described contentions of State Farm Mutual and State Farm Fire.

60.   Based on the above-described actual dispute and disagreement between State

Farm Mutual and State Farm Fire and Family Practice, there is a case in controversy as it relates to rights and responsibilities concerning payment of the bills and Family Practice's claims for PIP or MedPay benefits for treatment allegedly provided to the Insureds identified in Exhibit "E" and for any future claim submitted during the pendency of this action.

61.     An actual controversy of a judicial nature exists between State Farm Mutual and State Farm Fire and Family Practice involving rights and liabilities under the subject insurance policies and, dependent upon the construction of Florida law, this controversy may be determined by a judgment in this action.

62.     State Farm Mutual and State Farm Fire seek a declaration setting forth the rights, status, legal relationship, liabilities, obligations and responsibilities of the parties under the applicable insurance policies and Florida law.

63.     There is a bona fide, actual, present controversy between State Farm Mutual and State Farm Fire and Family Practice over the issue of whether State Farm Mutual, State Farm Fire, and their Insureds have been relieved of liability for any PIP or MedPay benefits on the medical bills submitted by Family Practice, and for any and all other charges relating to other treatment or services allegedly rendered to the Insureds, which have not yet been paid.  This includes all of the Pending Claims and any and all claims, demands, and medical bills submitted by Family Practice during the time that this action is pending.

64.     There is a bona fide, actual, present, and practical need for a declaration by this Court to resolve the above-described controversy between State Farm Mutual and State Farm Fire and Family Practice because, among other things, Family Practice contends payment is due and owing, and Plaintiffs do not.

65.    The interests of State Farm Mutual and State Farm Fire and Family Practice are adverse and this is not merely a request for an advisory opinion because Family Practice has submitted bills and such bills have not been paid.

66.    All interested parties are before the Court.

WHEREFORE, Plaintiffs, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, respectfully request this Court enter judgment declaring the following:

A.    Any and all claims or medical bills regarding any claims listed in Exhibit "E" are not due and payable from State Farm Mutual, State Farm Fire, or their Insureds.

B.    Any and all claims and medical bills submitted by Family Practice to State Farm Mutual and State Farm Fire for services rendered to their Insureds during the pendency of this action are not due and payable from State Farm Mutual, State Farm Fire, or their Insureds.

C.    State Farm Mutual and State Farm Fire are entitled to other relief, attorneys' fees, costs, interest and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and all other applicable law, Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated this __14th__ day of ___FEBRUARY___, 2018.

BART R. VALDES
Florida Bar Number 323380
CAMERON S. FRYE
Florida Bar Number 105142
de Beaubien, Simmons, Knight,
    Mantzaris & Neal, LLP

609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
bvaldes@dsklawgroup.com

KENNETH P. HAZOURI
Florida Bar Number 19800
de Beaubien, Simmons, Knight,
 Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
khazouri@dsklawgroup.com
Attorneys for Plaintiffs